Danny C. Kelly (USBA 01788)
Catherine Parrish Lake (USBA 11454)
Jason W. Crowell (USBA 13019)
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  (801) 578-6979
Facsimile:  (801) 578-6999
dckelly@stoel.com
cplake@stoel.com
jwcrowell@stoel.com

Christopher N. Weiss (WSBA 14826)
    admitted *pro hac vice*
Brian C. Park (WSBA 25584)
    admitted *pro hac vice*
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
Telephone:  (206) 386-7624
Facsimile:  (206) 386-7500
cnweiss@stoel.com
bcpark@stoel.com

Counsel for Playboy Enterprises International, Inc.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>PLAY BEVERAGES, LLC,<br><br>     Debtor. | Bankruptcy Case No. 11-26046<br><br>Chapter 11<br><br><br>Honorable Joel T. Marker<br><br>[Filed Electronically] |
| PLAY BEVERAGES, LLC,<br><br>     Plaintiff,<br><br>     v.<br><br>PLAYBOY ENTERPRISES<br>INTERNATIONAL, INC., et al.,<br><br>     Defendants. | Adversary Proceeding No. 11-02599 |

## PLAYBOY ENTERPRISES INTERNATIONAL, INC.'S
## ANSWER TO AMENDED COMPLAINT

Playboy Enterprises International, Inc. ("Playboy") answers Play Beverages, LLC's

("PlayBev") amended complaint, using like-numbered paragraphs, as follows:

**NATURE OF THE CASE**

1.      As to sentence one, Playboy denies that PlayBev is entitled to any relief in this action and, instead, is liable for damages to Playboy for the reasons set forth below in Playboy's Counterclaim.  Playboy admits that it is a party to the Product License Agreement dated November 1, 2006, as amended.  As to sentence two, the Product License Agreement speaks for itself.  Beyond that, Playboy lacks information sufficient to form a belief about the truth of the allegations as to PlayBev's intentions and state of mind when the Product License Agreement was signed and therefore denies them.  Playboy denies that PlayBev performed the actions alleged in the third sentence.  Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

2.      Playboy denies the allegations.

3.      Playboy denies the allegations.

4.      Playboy denies the allegations.

5.      Playboy denies the allegations.

6.      Playboy denies the allegations and denies the PlayBev is entitled to any relief.

7.      Playboy denies the allegations and denies the PlayBev is entitled to any relief.

8.       Playboy denies the allegations and denies the PlayBev is entitled to any relief.

**PARTIES, JURISDICTION, AND VENUE**

9.      Playboy denies the allegations in the first sentence.  The allegations in the second sentence are legal conclusions; no response is required.

10.     Playboy is a Delaware corporation with its principal place of business in Chicago, Illinois.  At all times relevant to this action, Playboy owned registrations for its PLAYBOY and Rabbit Head Design trademarks.  Playboy denies the remaining allegations.

11.     Playboy admits the Jimmy Esebag is an individual and believes that he resides in California and has a role in ULG.  Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.  The allegations are against a defendant other than Playboy; no response is required.

12.     Playboy believes that ULG is a corporation, but lacks sufficient information to form a belief about the truth of the remaining allegations of sentence one and therefore denies the remaining allegations.  Regarding sentence two, Playboy admits that it has a contractual relationship with ULG, but lacks sufficient information to form a belief about the truth of the remaining generalized allegations of sentence two and therefore denies those allegations. Playboy lacks sufficient information to form a belief about the truth of the allegations of sentence three and therefore denies those allegations.  The allegations are against a defendant other than Playboy; no response is required.

13.     Playboy lacks sufficient information to form a belief about the truth of the allegations and therefore denies them.  The allegations are against a defendant other than Playboy; no response is required.

14.     Playboy lacks sufficient information to form a belief about the truth of the allegations and therefore denies them.   The allegations are against a defendant other than Playboy; no response is required.

15.     Playboy lacks sufficient information to form a belief about the truth of the allegations and therefore denies them.   The allegations are against a defendant other than Playboy; no response is required.

16.    Playboy lacks sufficient information to form a belief about the truth of the allegations and therefore denies them.   The allegations are against a defendant other than Playboy; no response is required.

17.    Playboy denies the allegations.

18.    Playboy denies the allegations.

19.    Playboy denies the allegations.

## GENERAL ALLEGATIONS

20.    Regarding sentence one, Playboy admits that it is a party to the Product License Agreement.  The Agreement speaks for itself.  Playboy denies PlayBev's characterization of the Agreement.  In addition, these are legal conclusions; no response is required.

21.    The Agreement speaks for itself.  Playboy denies that PlayBev's characterization of the payment terms under the Agreement is complete.  In addition, these are legal conclusions; no response is required.

22.    The Agreement speaks for itself.  Playboy denies that PlayBev's characterization of the payment terms under the Agreement is complete.  In addition, these are legal conclusions; no response is required.

23.    The Agreement speaks for itself.  Playboy denies that PlayBev's characterization of Minimum Net Sales under the Agreement is complete.  In addition, these are legal conclusions; no response is required.

24.     Playboy denies the allegations.

25.    Playboy admits that a written amendment to the Product License Agreement was executed on or about December 19, 2008.  The Amendment speaks for itself and addresses,

among a variety of terms, added countries.  The allegations are legal conclusions; no response is required.

26.     The Amendment speaks for itself and addresses, among a variety of terms, guaranteed royalties, earned royalties and Minimum Net Sales.  As to sentence three, Playboy denies the allegations, except that Playboy admits the Amendment sets Minimum Net Sales at $7,000,000 for each license year for the added countries.  The allegations are legal conclusions; no response is required.

27.     The Amendment speaks for itself and addresses, among a variety of terms, Minimum Net Sales.  The allegations are legal conclusions; no response is required.

28.     Playboy admits that the Product License Agreement was subject to several written amendments between 2009 and 2011.  The amendments speak for themselves and address a variety of terms.  Some of the terms in the amendments provided for additional countries. Playboy denies PlayBev's characterization set out in sentence two.   The allegations are legal conclusions; no response is required.

29.     Playboy denies that PlayBev performed the actions alleged.  Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

30.     Playboy denies that PlayBev performed the actions alleged.  Playboy lacks information sufficient to form a belief as to what PlayBev means by "its affiliates" and therefore denies the allegations.  Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

31.     PlayBev lacks information sufficient to form a belief as to what PlayBev means by "its affiliates" and therefore denies the allegations.  Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

32.     Playboy denies the allegations of sentence one.  As to sentence two, Playboy admits that it wrote a letter to PlayBev stating that it would "evaluate a renewal of the [Product License Agreement] under the condition that Play Beverages, LLC is in full compliance with all of the terms and conditions outlined in the [Product License Agreement]."

33.     Playboy admits that it approved a number of manufacturers and/or distributors proposed by PlayBev.  Playboy lacks information sufficient to form a belief about the truth of the allegations as to whether PlayBev purportedly has sought Playboy's approval for each manufacturer and distributor.  Playboy lacks information sufficient to form a belief about the truth of the allegations as to what PlayBev means by the terms "sub-license agreements" and "sub-licensees" and therefore denies the allegations.  Playboy denies approving or authorizing the substantive terms of any PlayBev's contract with purported manufacturers and/or distributors and/or sublicensees.  Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

34.     Playboy admits that PlayBev has never met its Minimum Net Sales obligations. Playboy denies that PlayBev made its best efforts to meet its contractual obligations to develop the market for Playboy Energy Drink.  Playboy admits that it knew that PlayBev did not meet its Minimum Net Sales obligations and denies the allegation that Playboy did not seek to terminate the Product License Agreement in light of PlayBev's failure to meet Minimum Net Sales. Playboy denies the allegations in the third sentence.

35.     Playboy denies the allegations.

36.     To the extent paragraph 36 refers back to paragraph 35, Playboy denies the allegations regarding purpored "representations" of Sarah Haney.  Playboy admits that written amendments were made to the Product License Agreement dated 2009, 2010, and 2011, which added countries to the list of Added Countries in the December 19, 2008 letter amendment. Playboy denies the remaining allegations.

37.     As to sentence one, Playboy admits that it has worked cooperatively with PlayBev at all times and denies the allegations in the first sentence purporting a change in Playboy practices in 2011.  As to sentence two, the Product License Agreement speaks for itself.  Playboy denies that PlayBev's characterization of the terms under the Agreement is complete.  In addition, these are legal conclusions; no response is required.  Playboy denies the allegations in sentence three.

38.     As to the first sentence, the Product License Agreement speaks for itself.  Playboy denies that PlayBev's characterization of the terms under the Agreement is complete. The allegations in the first sentence are legal conclusions; no response is required.  Playboy denies the remaining allegations.

39.     Playboy denies the allegations.

40.     Playboy denies the allegations.

41.     Playboy denies the allegations.

42.     Playboy denies the allegations in sentence one.  Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

43.     Playboy denies the allegations.

44.     Regarding sentence one, Playboy admits that it did not inform and had no obligation to inform PlayBev that it was attempting to identify a suitable licensee in light of

PlayBev's multiple defaults under the Product License Agreement or that, in late May 2011, after

Playboy provided PlayBev with a written notice of default, Playboy entered into negotiations

with a potential licensee (although no licensee has been secured as of this date). As to the

complaint's reference to "brokers," that term is not defined, and as such Playboy lacks

information sufficient to form a belief about the truth of the allegations and therefore denies

them. Playboy denies the allegations in sentence two. As to sentence three, Playboy admits that,

in early April 2011, PlayBev had failed to meet its royalty payment obligations for the prior

license year and had also failed to meet its royalty payment obligations for the current license

year, and that Kawal and Ms. Haney were communicating regarding PlayBev's payment

defaults under the Product License Agreement to ascertain whether PlayBev would agree to and

would perform in funding a payment plan to meet its royalty obligations. As to sentence three's

general reference to "internal e-mails," Playboy lacks information to identify the emails to which

PlayBev is referring sufficient to form a belief about the truth of the allegations. As a general

proposition, in light of PlayBev's payment defaults by early April, Playboy was evaluating

whether to secure a different licensee capable of performing. At that time, PlayBev had not yet

reported its Minimum Net Sales for the just-completed license year. When PlayBev reported its

Minimum Net Sales in late April 2011, confirming that PlayBev had failed to meet its

contractual obligations for the just-completed license year, the sales figures established an

incurable default under the Product License Agreement. Playboy continued to evaluate a

licensee thereafter and to address that consideration in its internal emails.

     45.     PlayBev makes a generalized reference to "Playboy's same internal

correspondence" in sentence two and appears to quote from that correspondence in sentence

three. Playboy cannot determine from PlayBev's generalized description the purported

correspondence to which PlayBev refers and therefore lacks sufficient information to form a belief as to the truth and accuracy of PlayBev's characterization of the unidentified correspondence and denies the allegations.  Playboy denies that terms of a licensee agreement were finalized.

46.     Playboy admits that, in light of PlayBev's multiple monetary and non-monetary defaults under the Product License Agreement, Playboy was interested in evaluating the suitability and capability of a licensee that would have the ability to perform, including the ability to pay royalties and to develop a distribution network that would fulfill the Minimum Net Sales obligations under a license agreement (which, as of early May 2011, PlayBev had failed to do under its Product License Agreement).  As of early May, Playboy admits that Mr. Grindel and Ms. Haney conferred about information Mr. Esebag had communicated about a potential licensee capable of performing.

47.     PlayBev lacks information sufficient to form a belief about the truth of the allegations as to Mr. Esebag and therefore denies them.  The allegations are against a defendant other than Playboy; no response is required.

48.     Playboy admits that it repeatedly was forced to make written demands to PlayBev that it meet its contractual obligations to pay the royalties due under the Product License Agreement, including when PlayBev had paid only $200,000 against the $2 million that was then due and that Playboy offered PlayBev an opportunity to agree to a payment plan by which PlayBev could meet its royalty obligations.  Playboy admits that PlayBev promised to make payments to cure its defaults under the Product License Agreement but, subsequently, again failed to meet its obligations by failing to make the payments that it promised.  Playboy denies the remaining allegations.

49.    Playboy admits that after PlayBev repeatedly failed to make payments it was obligated to make under the Product License Agreement and, thereafter, failed to make royalty payments it had promised to make under a payment plan, and in light of PlayBev's concurrent failure to fulfill its market development obligations as demonstrated by PlayBev's failure to meet Minimum Net Sales, Playboy met with Paul Levin in June 2011 to ascertain whether he might have the capacities to undertake a licensee's obligations and whether there were terms that could be mutually agreeable.  Ultimately, no agreement was entered.  Playboy denies the remaining allegations.

50.    Answering for itself, Playboy denies the allegations in the first and second sentences.  As to sentence three, Playboy admits that Markus Grindel is an executive with Playboy and denies that Ana Cashman and Jennifer Kelly are executives with Playboy, admits that Judy Kawal works for Playboy, admits that Ms. Kawal wrote an email dated May 23, 2011, and admits that paragraph 50 contains an excerpt from an email string.  The remaining allegations are against defendants other than Playboy; no response is required.

51.    Playboy denies the allegations.

52.    Playboy denies the allegations in the first sentence.  Playboy denies that Judy Kawal is an executive of Playboy.  Playboy denies that the excerpted language set out in paragraph 52 is complete and denies that it accurately reflects the context of the email exchange.

53.    Playboy denies the allegations.

54.    Playboy denies the allegations.

55.    Playboy denies the allegations.

56.    Playboy admits that it emailed distributors of the Playboy Energy Drink on July 14, 2011.  Playboy denies the remaining allegations.

57.     Playboy denies the allegations.

58.     Playboy admits that it sent a notice of default to PlayBev dated May 27, 2011, and that it stated, among other things, that PlayBev "failed to adhere to the payment plan agreed upon by the parties and to remit to [Playboy] the Guaranteed Royalty payment in the amount of U.S.$500,000 that was due and payable not later than May 23, 2011." Playboy denies that the notice of default terminated the Product License Agreement.

59.     Playboy admits the May 27, 2011 notice did not make reference to PlayBev's incurable defaults, which PlayBev references in its complaint, and admits that the notice was not required to make such reference.

60.     Playboy admits that it sent a notice of termination to PlayBev dated June 7, 2011, the grounds for which were (a) PlayBev's failure to make the Guaranteed Royalty payment due, which was the type of default capable of being cured under the Product License Agreement (which PlayBev failed to do), and (b) PlayBev's failure to meet the Minimum Net Sales requirement, which is an incurable default under the Product License Agreement (for which PlayBev already was in default). Playboy denies that any aspect of its notice of termination  or its earlier notice of default was deficient in any manner, except that the failure to meet Minimum Net Sales should have made reference to the failure for License Year 4 instead of License Year 5.

61.     Playboy admits that both its notice of default and notice of termination were properly drafted and delivered in compliance with the terms of the Product License Agreement and properly reflected PlayBev's defaults so as to effect a contractual termination of the Agreement, and that the notices did not reference (nor were they required to reference) PlayBev's repeated failures to fulfill its contractual obligations to protect Playboy's marks.

## FIRST CAUSE OF ACTION

62.    Playboy incorporates the foregoing paragraphs.

63.    Playboy admits that PlayBev has defaulted on its contractual obligations under the Product License Agreement to meet the Minimum Net Sales requirements for both the Territory and the Added Countries.  Playboy denies that these contractual sales requirements were "targets."

64.    Playboy admits that, in compliance with the terms of the Product License Agreement, it attempted to terminate the Agreement based on *inter alia* PlayBev's failure to meet the Minimum Net Sales requirement.  Only after Playboy sent its notice of termination did PlayBev's then-attorney (who later withdrew as PlayBev's counsel) belatedly advise Playboy that PlayBev had been placed into an involuntary bankruptcy due to a petition filed by several current and former PlayBev equity holders, PlayBev debt holders, and PlayBev founders.

65.    Playboy denies the allegations.

66.    Playboy denies the allegations.

67.    Playboy denies the allegations.

68.    Playboy denies the allegations.

69.    Playboy denies the allegations.

## SECOND CAUSE OF ACTION

70.    Playboy incorporates the foregoing paragraphs.

71.    Playboy admits that PlayBev has defaulted on its contractual obligations under the Product License Agreement to meet the Minimum Net Sales requirements for both the Territory and the Added Countries.  Playboy denies that these contractual sales requirements were "targets."

72.     Playboy admits that PlayBev's failure to meet its Minimum Net Sales obligation under the Product License Agreement constitutes an incurable default entitling Playboy to terminate the Agreement.  Section 2(e) of the Product License Agreement speaks for itself.

73.     Playboy admits that PlayBev failed to meet the Minimum Net Sales requirement for License Year 4, which is an incurable default under the Product License Agreement that entitles Playboy to terminate the Agreement, and admits that, consistent with its contractual rights, Playboy provided notice of termination to PlayBev on June 7, 2011.  Only after Playboy provided such notice of termination did PlayBev's then-attorney (who later withdrew as PlayBev's counsel) belatedly advise Playboy that PlayBev had been placed into an involuntary bankruptcy due to a petition filed by several current and former PlayBev equity holders, PlayBev debt holders, and PlayBev founders.

74.     Playboy denies the allegations.

75.     Playboy denies the allegations.

76.     Playboy denies the allegations.

## THIRD CAUSE OF ACTION

77.     Playboy incorporates the foregoing paragraphs.

78.     Playboy admits the allegations.

79.     Playboy admits that PlayBev failed to fulfill its contractual obligations to police and protect Playboy's trademarks, which constitutes an incurable default for which Playboy may terminate the Product License Agreement.

80.     Playboy admits the allegations in the first sentence.  Playboy denies the remaining allegations.

81.     Section 2(j)(ii) of the Product License Agreement speaks for itself.  PlayBev has

not set out in the complaint the full and accurate test of Section 2(j)(ii).  The allegations are legal

conclusions; no response is required.

82.     Playboy denies the allegations.

83.     Playboy denies the allegations.

84.     Playboy admits the allegations.

85.     Playboy denies the allegations.

86.     Playboy denies the allegations.

## FOURTH CAUSE OF ACTION

87.     Playboy incorporates the foregoing paragraphs.

88.     Playboy admits that the debtor cannot assume the Product License Agreement.

The remaining allegations are legal conclusions; no response is required.

89.     Playboy admits that the debtor cannot assume the Product License Agreement.

Playboy denies that it is possible for PlayBev to not be in default under the Product License

Agreement and denies that it is possible for PlayBev to satisfy all of the requirements for

assumption of the license.

90.     Playboy admits that PlayBev disagrees with the position that the debtor-in-

possession is unable to assume the Product License Agreement.

91.     Playboy denies the allegation.

92.     Playboy denies the allegation.

## FIFTH CAUSE OF ACTION

93.     Playboy incorporates the foregoing paragraphs.

94.     Playboy admits that the Product License Agreement is a valid and binding

contract, the terms of which speak for themselves.  Playboy admits that it has sought to terminate

the Agreement in light of PlayBev's defaults.

95.     Playboy denies the allegations.

96.     Playboy has pending with the Court in the chapter 11 proceeding a motion

seeking relief from the automatic stay, which, if granted, would allow Playboy to proceed with

terminating the Product License Agreement.  PlayBev has an obligation to file by not later than

October 14, 2011 a motion to assume or reject the Product License Agreement, which, if the

debtor seeks to assume the Agreement, obligates the debtor to *inter alia* demonstrate it can cure

all defaults, assume the Agreement, and otherwise provide adequate assurance of future

performance.  No such showing has been made by the debtor.  But Playboy intends to examine

PlayBev's motion upon its submission.

97.     Playboy denies the allegations.

98.     Playboy denies the allegations.

99.     Playboy denies the allegations.

### SIXTH CAUSE OF ACTION

100.    Playboy incorporates the foregoing paragraphs.

101.    The allegations are legal conclusions; no response is required.

102.    Playboy denies the allegations.

103.    Playboy denies the allegations.

104.    Playboy denies the allegations.

### SEVENTH CAUSE OF ACTION

105.    Playboy incorporates the foregoing paragraphs.

106.    Playboy denies the allegations.

107.    Playboy denies the allegations.

108.    Playboy denies the allegations.

109.    Playboy denies the allegations.

110.    Playboy denies the allegations.

111.    Playboy denies the allegations.

112.    Playboy denies the allegations.

113.    Playboy denies the allegations.

## EIGHTH CAUSE OF ACTION

114.    Playboy incorporates the foregoing paragraphs.

115.    Playboy admits the allegations.

116.    The allegations are legal conclusions; no response is required.

117.    Playboy admits that, after the close of business on June 7, 2011, PlayBev's former counsel sent a letter disclosing the existence of the involuntary bankruptcy proceeding.  Playboy denies that it was aware of the effect of the automatic stay on June 7, 2011.

118.    Playboy admits that it promptly filed a motion in the chapter 7 proceeding seeking relief from the automatic stay so as to allow Playboy to proceed with the termination of the Product License Agreement.  Playboy admits that Judy Kawal emailed distributors of the Playboy Energy Drink on July 14, 2011, accurately stating that Playboy "believes that PlayBev is in breach of its agreement with Playboy and took steps to terminate the agreement with PlayBev before PlayBev informed Playboy of the bankruptcy petition."  Playboy denies the remaining allegations.

119.    Playboy denies the allegations.

120.   Playboy denies the allegations

121.   Playboy denies the allegations.

122.   The allegations in the first sentence are legal conclusions; no response is required. Playboy admits that PlayBev has no contracts with distributors.  PlayBev lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

123.   Playboy denies the allegations.

124.   Playboy denies the allegations.

## NINTH CAUSE OF ACTION

125.   Playboy incorporates the foregoing paragraphs.

126.   Playboy lacks information sufficient to form a belief about the truth of the allegations and therefore denies them.

127.   Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

128.   Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

129.   Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

130.   Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

131.   Playboy denies the allegations.

## TENTH CAUSE OF ACTION

132.   Playboy incorporates the foregoing paragraphs.

133. The allegations are against a defendant other than Playboy; no response is required.

134. As to Playboy's alleged involvement, Playboy denies the allegations in 134(b), 134(c), and 134(f). Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

135. As to any implied Playboy involvement, Playboy denies the allegations.

136. Playboy denies the allegations.

## ELEVENTH CAUSE OF ACTION

137. Playboy incorporates the foregoing paragraphs.

138. The Product License Agreement speaks for itself. Beyond that, Playboy lacks information sufficient to form a belief about the truth of the allegations as to PlayBev's intentions and state of mind when the Product License Agreement was signed and therefore denies them. Playboy admits that the Product License Agreement is a valid and binding contract.

139. Playboy denies the allegations.

140. Playboy lacks information sufficient to form a belief about the truth of the allegations and therefore denies them.

141. Playboy denies 141(a). Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

142. To the extent this paragraph refers back to 141(a), Playboy denies the allegations. As to any other alleged conduct, Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

143. To the extent this paragraph refers back to 141(a), Playboy denies the allegations. Playboy also denies the remaining allegations.

144. Playboy denies the allegations.

145. Playboy denies the allegations.

## TWELFTH CAUSE OF ACTION

146. Playboy incorporates the foregoing paragraphs.

147. Playboy lacks information sufficient to form a belief about the truth of the allegations and therefore denies them.

148. Playboy lacks information sufficient to form a belief about the truth of the allegations and therefore denies them.

149. Playboy lacks information sufficient to form a belief about the truth of the allegations and therefore denies them.

150. Playboy lacks information sufficient to form a belief about the truth of the allegations and therefore denies them.

151. Playboy lacks information sufficient to form a belief about the truth of the allegations and therefore denies them.

152. Playboy incorporates the foregoing paragraphs.

## THIRTEENTH CAUSE OF ACTION

153. Playboy incorporates the foregoing paragraphs.

154. The Product License Agreement speaks for itself.  Beyond that, Playboy lacks information sufficient to form a belief about the truth of the allegations as to PlayBev's intentions and state of mind when the Product License Agreement was signed and therefore denies them.  Playboy admits that the Product License Agreement is a valid and binding contract.

155. Playboy denies the allegations.

156.    Playboy lacks information sufficient to form a belief about the truth of the allegations and therefore denies them.

157.    Playboy denies 157(a) and 157(b).  Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

158.    To the extent this paragraph refers to 157(a) and 157(b), Playboy denies the allegations of sentence one, and as to any other implied conduct, Playboy lacks information sufficient to form a belief about the truth of the allegations and therefore denies them.  Playboy denies sentence two.

159.    Playboy denies the allegations.

160.    Playboy denies the allegations.

161.    Playboy denies the allegations.

**FOURTEENTH CAUSE OF ACTION**

162.    Playboy incorporates the foregoing paragraphs.

163.    The Product License Agreement speaks for itself.  Beyond that, Playboy lacks information sufficient to form a belief about the truth of the allegations as to PlayBev's intentions and state of mind when the Product License Agreement was signed and therefore denies them.  Playboy admits that the Product License Agreement is a valid and binding contract.

164.    Playboy lacks information sufficient to form a belief about the truth of the allegations and therefore denies them.

165.    Playboy denies the allegations.

166.    To the extent this paragraph impliedly refers to paragraph 165's reference to Playboy, Playboy denies the allegations in sentences one and two.  Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

167.   Playboy denies the allegations.

168.   Playboy denies the allegations.

## FIFTEENTH CAUSE OF ACTION

169.   Playboy incorporates the foregoing paragraphs.

170.   The Product License Agreement speaks for itself.  Beyond that, Playboy lacks information sufficient to form a belief about the truth of the allegations as to PlayBev's intentions and state of mind when the Product License Agreement was signed and therefore denies them.  Playboy admits that the Product License Agreement is a valid and binding contract.

171.   Playboy lacks information sufficient to form a belief about the truth of the allegations and therefore denies them.

172.   Playboy denies the allegations.

173.   To the extent this paragraph impliedly refers to paragraph 172's reference to Playboy, Playboy denies the allegations in sentences one and two.  Playboy lacks information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

174.   Playboy denies the allegations.

175.   Playboy denies the allegations.

Playboy denies that PlayBev is entitled to any item set forth in its Prayer for Relief. Playboy does not request a jury and denies that PlayBev is entitled to a jury.  Any allegation in the complaint that is not specifically addressed above is, by this reference, expressly denied.  By way of further answer and as affirmative defenses, Playboy states as follows:

## AFFIRMATIVE DEFENSES

1.   PlayBev fails to state a claim on which relief can be granted.

2.   PlayBev fails to name a necessary and indispensable party.

3.      PlayBev lacks standing and/or capacity to sue.

4.      PlayBev's recovery, if any, should be barred or reduced by its comparative fault, contributory negligence, and contributory fault and/or as otherwise provided by applicable law.

5.      PlayBev brings this action in an improper venue.

6.      PlayBev's recovery should be barred or reduced under the doctrine of unclean hands.

7.      PlayBev's breach of the Product License Agreement excused and excuses Playboy's further performance.

8.      PlayBev's  recovery, if any, should be barred or reduced by its failure to mitigate damages.

9.      Playboy's conduct, in part, is subject to immunity.

10.     PlayBev's claims are barred by PlayBev conduct constituting laches and waiver.

Playboy reserves the right to amend its answer and affirmative defenses as additional information is learned through its internal investigation and through discovery.

**<u>COUNTERCLAIM</u>**
**(Breach of Contract)**

1.      Playboy incorporates the foregoing paragraphs.

2.      Playboy and PlayBev are parties to the Product License Agreement dated November 1, 2006, as amended thereafter by letter amendments signed by the parties.

3.      Illinois law applies to Playboy's contract claim.

4.      Under the Product License Agreement, as amended by the December 19, 2008 letter amendment, PlayBev promised to, and was required to make an aggregate payment to Playboy in the combined amount of $2 million on or before April 1, 2011 for the current license year, which began on April 1, 2011 and ends on March 31, 2012.

5.       To date, PlayBev has paid Playboy only $500,000 of the required $2 million Guaranteed Royalty.

6.       PlayBev breached the Product License Agreement, as amended, by failing to make the full $2 million Guaranteed Royalty payment on or before April 1, 2011.

7.       Thereafter, during April 2011, PlayBev proposed to make payments on a schedule.  PlayBev made several initial payments pursuant to the schedule that PlayBev proposed, aggregating to $500,000 as of June 6, 2011.  But since June 6, 20011, PlayBev has not made any further royalty payments to Playboy.

8.       PlayBev's default on its payment obligations constitute a material default of its contractual obligations under the Product License Agreement, as amended.

9.       Playboy has continued to perform under the Product License Agreement notwithstanding the fact that it has not been paid by PlayBev.

10.      PlayBev's breach of contract and its failure to pay have proximately caused damage to Playboy.

## PRAYER

Wherefore, Playboy requests the following relief:

1.       On Playboy's counterclaim, an award of Playboy's liquidated damages in the amount of $1,500,000 plus prejudgment interest;

2.       That PlayBev take nothing by way of its complaint;

3.       That PlayBev's claims be dismissed with prejudice;

4.       That Playboy be awarded its costs, disbursements and reasonable attorneys' fees; and

5.       That the Court award any other relief as the Court deems just and equitable.

DATED this 5th day of October 2011.

**STOEL RIVES** LLP

/s/Danny C. Kelly
Danny C. Kelly (USBA 1788)
Catherine Parrish Lake (USBA 11454)
Jason W. Crowell (USBA 13019)

Counsel for Playboy Enterprises International, Inc.